## EDITH B. RICHEY, RESPONDENT, *v.* JOSEPH CLARK, APPELLANT.

PAYMENT BY MUTUAL MISTAKE. — RECOVERY. — NEGLIGENCE. — QUÆRE.— S. sold a certain tract of land to W. R. S. and took back a note secured by mortgage on the land in part payment, which was recorded on the 12th day of September, 1888, and assigned to defendant by S. on the 29th day of October, 1889. On the 26th day of October, 1889, W. R. S. sold plaintiff 40 lots, executing and delivering a warranty deed therefor, plaintiff believing at the time she purchased the lots that they were free from all incumbrances.    Plaintiff, afterwards desiring to mortgage the lots, employed an attorney to examine the title who reported to her that the lots were incumbered by the blanket mortgage executed by W. R. S. to secure the balance ·of the purchase price.    She then went to defendant, the assignee of the mortgage, who also believed that the lots were included in the mortgage, to obtain a release, who required a payment ·of $400 for the release which was made on the 24th day of December, 1890, and the money credited upon the note of W. R. S. secured by the mortgage.    Defendant, upon beginning foreclosure proceedings, discovered that the lots were not included in the mortgage, and in that suit prayed that the mortgage be reformed so as to include the lots, which, however, was not done.    Judgment in the foreclosure suit was rendered for the amount of the note less the amount paid for the release.

The land remaining as security, did not fully satisfy the judg-
ment. *Held*, that since both plaintiff and defendant had acted
honestly and in good faith, each believing that the lots were
included in the mortgage, the loss should fall upon the plaintiff,
whose conduct was more negligent, and since the parties could
not be placed in *statu quo*, plaintiff could not recover the
amount paid by mistake for the release. (Bartch, J., *dissent-
ing*): *Sed quœre*, was it not the duty of defendant, who dis-
covered in the foreclosure suit that the lots were not included
in the mortgage, to have asked the court to reform the mort-
gage so as to include the lots, and in case he was not entitled
to have that done, to strike off and disallow the credit of $400
paid by mistake, and to give him judgment for the full amount?
*Vel quœre*, that if the fact whether or not the lots were in-
cluded in the mortgage had not been adjudicated in the fore-
closure suit or had been omitted from the decree by mistake,
was not the plaintiff, not having been a party to that suit,
entitled to have that fact adjudicated, and was not her right
to recover dependent on the fact that the lots ought not to
have been included in the mortgage?

(No. 532.   Decided June 6, 1895.   40 P. R. 717.)

Appeal from the District Court of the Fourth Judicial
District.   Hon. James A. Miner, *Judge*.

Action by Edith B. Richey to recover money paid by
mutual mistake.   From a judgment for plaintiff, defend-
ant appeals.   *Reversed.*

To the facts stated in the opinion, the following may be
added:  Stowell sold a tract of land to Swan and took
back a note and mortgage in part payment, which was
recorded on the 12th day of September, 1888, and assigned
to Clark on the 29th day of October, 1889.   On the 26th
day of October, 1889, Swan sold plaintiff 40 lots, executing
a warranty deed therefor.   On the 24th day of December,
1890, defendant released the mortgage upon the 40 lots on
payment of $400.   Clark began foreclosure proceedings on
March 13, 1891, and having discovered that the mortgage

·did not include the 40 lots, prayed that the mortgage be reformed and the lots included. A decree was entered in his favor January 2, 1892, and judgment entered for the full amount less the payment made of $400. In the decree the mortgage was not reformed nor the correction made.

*Messrs. Evans & Rogers* and *Mr. A. G. Horn,* for appellant.

There is no contention that there was any fraud or misrepresentation made by either party, but on the contrary, ·each party supposed that the mortgage covered the lots. The mistake, in other words, was honest and mutual.

That money may be recovered which has been paid by mutual mistake and without consideration, generally speaking, there is but little if any doubt. It is equally well ·established that where money is paid through mistake, and the party making such payment causes the other to change his position with a creditor or any other person connected with the transaction, so that by reason of such payment such parties cannot be placed in *statu quo,* at the time suit be brought to recover, on account of such mistake, the party making such payment must suffer the loss. *Eastman* v. *St. Anthony,* 24 Minn. 437; *Manz* v. *Hardy,* 13 N. W. R. (Neb.) 12; *McArthur* v. *Luce,* 43 Mich. 437; *Walker* v. *Conant,* 65 Mich. 194; *Sanger* v. *Mellon,* 51 Wis. 560; *Guild* v. *Balbridge,* 2 Swan (Tenn.), 295; *Boas* v. *Updegrove,* 47 Am. Dec. 425; *Hall* v. *Shultz,* 4 Am. Dec. 270; S. C. 4 John. 240; *Mayer* v. *Shoemaker,* 5 Barb. 319. "The rule is general that money paid under a mistake of material facts may be recovered back, although there was negligence on the part of the party making the payment, but this rule is subject to the qualification that the payment cannot be recalled when the situation of the

party receiving the money has been changed in consequence of the payment, and it would be inequitable to allow a recovery. The person making the payment must in that case bear the loss occasioned by his own negligence." *Walker* v. *Conant,* 65 Mich. 195.

*Messrs. Breeden & Gunnell,* for respondent.

Richey did not buy the lots, believing, nor did Swan sell them believing, that the Stowell mortgage covered them, hence Swan asked and Richey paid full value for the lots. Richey upon receiving information that they were supposed to be covered by this mortgage, immediately called upon the defendant, and defendant then told her that the lots were covered by the Stowell mortgage and that he was about to foreclose the same and that if the lots were released they would have to be released within a certain time, and that he would release them for $10 per lot. So that Clark was the party to confirm Richey in the supposition that the incumbrance was there. Clark is chargeable with knowledge as to what lots were included in the mortgage, and hence the trial judge found that, as between Clark and Richey the fault lay with Clark. Clark cannot complain because Richey rested two years under the mistake which Clark first confirmed in his mind, because Clark discovered in the foreclosure suit that the lots were not included in the mortgage, but never informed Richey of this fact, who brought suit soon after she became aware of the fact that she had paid the money by mistake. The evidence clearly shows that whatever negligence or fault occurred on the part of either of the parties was occasioned by Clark, and the court so found, and the $400 paid by Richey to Clark was without the slightest consideration. While two years elapsed between the date of the release and the time of bringing this

action, Richey was in ignorance of the facts, while Clark knew them and tried but failed, to get the court to hold the lots. Richey had no legal claim upon Swan, but Clark could and ought to have returned the money to Richey on commencing the foreclosure suit and included the $400 against Swan. The principle is too well settled for argument that money may be recovered which has been paid by mutual mistake and without consideration. *United States* v. *Barlow,* 132 U. S. 281; *Louisiana* v. *Wood,* 102 U. S. 298; *Fraker* v. *Little,* 136 Am. R. 263; *Lewellen* v. *Garrett,* 126 Am. R. 74, *Sharkey* v. *Mansfield,* 43 Am. R. 161; *Bouk* v. *Graffin,* 1 Am. R. 68; 15 Am. & Eng. Enc. of Law, 679–81; *Ruhling* v. *Hockett,* 1 Nev. 311. In 2 Daniel on Negotiable Instruments, §: 1369, the author says: "It is a general principle of law that money paid under a mistake of fact may be recovered back. And now the doctrine is favored that even negligence in making the mistake is no bar to recovery." *National Bank of Commerce* v. *National M. B. A.,* 55 N. Y. 211; 14 Am. R. 232; 54 N. Y. 435; 21 Cal. 189; 18 Cal. 148.

KING, J.:

The record in this case discloses the following facts: William Stowell on the 1st day of September, 1888, sold a tract of land to W. R. Swan, taking in part payment therefor a note secured by a mortgage on the land. The mortgage was duly recorded on the 12th of the same month. For a valuable consideration, Stowell assigned, on October 29, 1888, the note and mortgage to defendant. A few days prior thereto, Swan conveyed, by warranty deed, 40 lots to plaintiff, the latter believing them free from all incumbrances. Swan supposed they were covered by the mortgage to Stowell, but omitted to inform plaintiff of this. In October, 1890, plaintiff and her husband desired

to mortgage the lots in order to secure merchandise for their business. An abstract was required, and they employed an attorney to examine the record and secure one. A few days thereafter the information was conveyed to plaintiff by her attorney that the lots were embraced within the mortgage then held by defendant, which had been given by Swan to Stowell. She thereupon went to Swan, in "order to pay the mortgage off," and to secure a release of the lots from defendant's mortgage. Swan could do nothing, and she called on defendant. He declined for some time to execute a release, but plaintiff's husband, who was acting for her, insisted, and stated that, with the lots freed from all liens, they could obtain $4,000 worth of merchandise to aid them in their business. Plaintiff fully believed that the mortgage held by defendant embraced the lots, and defendant entertained the same view. In fact, it seems clear from the record that it was the design of the mortgagor and mortgagee that the mortgage should cover the lots in question, as the security was somewhat inadequate without them; and it was supposed by all the parties to the transaction that the lots were subject to the mortgage. Clark purchased the note and mortgage with this understanding. After some negotiations between plaintiff and defendant, it was agreed that the latter should release the lots from the supposed incumbrance, and the former should pay him $400; and on December 24, 1890, plaintiff's husband, together with her attorney, went to Swan's office, and there paid, either to defendant or Swan, the amount agreed upon, and the release was then and there executed by Clark. Both parties acted in good faith. The money was paid in order, as plaintiff supposed, to disencumber her property, and was received by defendant only at the solicitation of plaintiff's husband, in order to aid them in their business, and recompense him for the supposed loss of security. As soon as the

money reached defendant he gave Swan credit for it upon his note, relieving the maker *pro tanto.* In January, 1892, appellant obtained a decree of foreclosure of the Swan mortgage. Plaintiff was not made a party to the foreclosure proceedings, because of the release theretofore executed, although Clark, who had, when he brought his suit, discovered the omission of the lots from the mortgage, asked for a correction of the mortgage so as to include them. In the suit upon the note and mortgage the judgment against Swan did not include the $400. The court treated it as a payment on the note. While the record is not clear, it appears that after exhausting the security there was still a balance due Clark on the note. In the latter part of 1892, plaintiff learned of the mistake in the mortgage, and demanded that defendant return the $400. He refused, and in December of the same year this action was commenced, to recover said amount, the complaint alleging payment by mistake. The trial judge held "that defendant was more negligent than plaintiff," and instructed the jury to find for the latter.

Plaintiff contends that where money is paid by mutual mistake an action will lie for its recovery. Defendant does not controvert this general rule, but claims that the case at bar comes within well-recognized exceptions. It is apparent that one of the parties to the controversy must suffer loss, unless plaintiff could recover from Swan, as suggested by appellant's counsel, for a breach of warranty, or from her attorney, for negligence. But that question is not before us. Each having acted honestly and in good faith, we think equitable principles would require that the misfortune be visited upon the one contributing more to the mistake; in other words, the one whose conduct was the more negligent. Defendant, in receiving the money, seems to be free from fault or negligence. Plaintiff was the actor. Her representations induced the payment. They

were the proximate cause of defendant's passive conduct, which resulted in his receiving the money. She, by her agent, searched the records, and reached the conclusion that the title was not clear. She then approached Clark. He was guilty of no fraud or deceit. He made no representations, except, when interrogated, to state that he would execute no release, unless paid, and concealed no facts known to him. There was an apparent cloud upon plaintiff's title. It was important that it be removed, and at once, as her business demanded the immediate purchase of goods, and this could not be done without the lots as security. Defendant was asked, as a favor, to relinquish his supposed lien. If negligence is to be imputed to either, it must be charged to plaintiff. Her agent made the mistake. His examination of the records was faulty, and plaintiff was thereby misled. No relation of trust or confidence existed between the parties. They were dealing as strangers, "at arm's length." Plaintiff did not rely upon defendant. Her conduct was the outgrowth of her own investigations, and the knowledge of the existence of supposed facts, which resulted from her own inquiries. The mistake did not proceed from a violation of obligations imposed by law upon defendant, and his conduct is not inconsistent with good faith. "When each party is equally innocent, and there is no concealment of facts which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference. It is strictly *damnum absque injuria.*" 1 Story, Eq. Jur. § 151.

It would seem that reasonable diligence upon plaintiff's part would have avoided the mistake. And when "the fact is equally unknown to both parties, or where each has adequate and equal means of information, or where the fact is doubtful from its nature, in every such case, if

the parties have acted in entire good faith, a court of equity will not interfere; for in such case the equity is deemed equal between the parties, and where it is so a court of equity is generally passive, and rarely exerts an active jurisdiction." Id. § 150. There ought to be finality to transactions between parties. The law does not tolerate carelessness and indifference in settlements between individuals. In disputed questions, where all parties have full opportunity to investigate and ascertain the facts, and where there is no fraud or misrepresentation, and when after such investigation, they become satisfied as to their respective rights, and thereupon adjust them, neither law nor equity will countenance efforts to revive and litigate the controversy. Even if there were no negligence on plaintiff's part, in her investigations concerning the title, it would seem that there was laches in waiting for nearly two years before making any demand for restitution of the money. The law sometimes imputes laches, even in the absence of knowledge. But what appears to us to be the strongest reason for denying plaintiff relief is found in the changed condition of the parties. A restoration of the parties to their original position is impossible. It has been held that equity will not decline to afford relief, in cases of mutual mistake, merely because of the intervention of circumstances which render it difficult to restore parties to their original position. *Beauchamp* v. *Winn*, 3 L. R. 6 H. L. 223. But the rule which has received approval in the supreme court of the United States is that "mistake, to be available in equity, must not have arisen from negligence, when the means of knowledge were easily accessible. * * * A court of equity is always reluctant to rescind, unless the parties can be put back in *statu quo*. If this cannot be done, it will give such relief only where the strongest and clearest

equity imperatively demands it." *Grymes* v. *Sanders*, 93 U. S. 61, 62.

When an insurance company purchased, received the assets, and assumed the liabilities of another company, and the transaction was afterwards declared to be *ultra vires,* it was held that, while the mistake was one equity would have the power to relieve against, yet, as it was impossible to restore both companies to their original situation, this was an insuperable objection to allowing the purchasing company to prove against the selling company an excess of debts over assets received. *In re Saxon Life Assur. Soc.,* 2 Johns. & H. 408. "The rule is general that money paid under a mistake of material facts may be recovered back, although there is negligence on the part of the party making the payment; but this rule is subject to the qualification that the payment cannot be recalled when the situation of the party receiving the money has been changed in consequence of the payment, and it would be inequitable to allow a recovery. The person making the payment must in that case bear the loss occasioned by his own negligence." *Walker* v. *Conant,* 65 Mich. 195, 31 N. W. 786. When the contract had been fully performed by the defendant, relief predicated on the sole ground of mutual mistake of fact was denied because the "situation of the parties had been so changed by reason thereof as to render it impossible to restore them to their situation at the time the contract was made. A court of equity will not interfere to rescind a contract, on the sole ground of a mutual mistake of fact, unless the parties can be restored substantially to their situation at the time the contract was made; for to so interpose would not cure the mischief, but simply shift it." *Eastman* v. *Water-Power Co.,* 24 Minn. 437. And the illustration employed by the court of Tennessee seems to square with the case under consideration. It is

said: " To illustrate the principle, take the case of a payment, without knowledge of the facts, made, not to the original creditor of the party paying, whose debt had been previously satisfied, but to a creditor of his, who received the money in good faith, ignorant of the mistake, and in satisfaction of a just demand, and who, in consequence of such payment, may have waived or lost his remedy against his debtor. In such case it is clear, upon well-established principles, that the plaintiff would not be entitled to recover. The defendant, in the given case, would be equally innocent as the plaintiff of the mistake; and, having lost his remedy upon the faith of such payment, it would not be against conscience for him to retain the money, and the loss must fall upon the plaintiff, by whose act, though innocently done, it was occasioned." *Guild* v. *Baldridge,* 2 Swan, 295; *McArthur* v. *Luce,* 43 Mich. 437, 5 N. W. 451; *Sanger* v. *Mellon,* 51 Wis. 560, 8 N. W. 487; *Boas* v. *Updegrove,* 47 Am. Dec. 425; *Hall* v. *Shultz,* 4 Am. Dec. 270; *Moyer* v. *Shoemaker,* 5 Barb. 319; *Espy* v. *Allison,* 9 Watts, 462. The rule is not changed because the party receiving the money has no interest whatever in the property. *Manzy* v. *Hardy* (Neb.), 13 N. W. 12.

Defendant herein, acting upon the strength of plaintiff's conduct, credited Swan with the money paid. Plaintiff caused defendant to change his position with Swan, and long before plaintiff commenced this action the rights of Clark and Swan had become fixed by decree of court. Applying the principle announced in the case of *Grymes* v. *Sanders, supra,* to the facts in this case, it is obvious that the plaintiff is not entitled to recover. It cannot be said that the "clearest and strongest equity" demands a rescission of the contract made. Indeed, we think it would be inequitable, and against good conscience, to uphold the judgment of the lower court. In view of the facts that

the parties cannot be placed in *statu quo,* and that the mistake is attributable to plaintiff, rather than defendant, we are of the opinion that the court erred · in directing a verdict for plaintiff. Its judgment is therefore reversed, and the cause remanded, with directions to grant a new trial.

MERRITT, C. J., and SMITH, J., concur.

BARTCH, J. *(dissenting)*:

I do not agree with my brethren in reversing this case. It is admitted, and shown by the record, that the plaintiff purchased the lots in question, in good faith, for a valuable consideration, believing them to be free from all incumbrances. Some time afterwards, desiring to mortgage the lots, it became necessary to ascertain the state of the title; and therefore she procured the services of an attorney, who, within a few days, informed her that the lots were covered by a "blanket mortgage." Thereupon she represented the matter to Clark, the appellant herein, who was the owner of the mortgage which was supposed to include the lots. There is some conflict in the evidence as to what representations Clark then made to the plaintiff, but it is clear that he claimed his mortgage covered the lots in question. The plaintiff becoming satisfied that such was the case, it was agreed between her and Clark that she should pay him the sum of $400 to release them, which sum having been paid, they were released on December 24, 1890. Up to this time it is conceded that both parties were mutually mistaken, and were acting in good faith.

On March 13, 1891, Clark began foreclosure proceedings upon the mortgage, and then learned that the lots were not covered by the mortgage; but although he knew that

the plaintiff was in ignorance of that fact, and that she had paid $400 as a result of such ignorance, which he was not entitled to, under the facts as they then actually existed, he made no attempt whatever to inform her that the lots' were not included in the mortgage. Nor did he make her a party to the foreclosure suit, and the only reason which he assigns, according to the admissions of his counsel, for not making her a party to that suit, and consequently for withholding from her his subsequently acquired knowledge, is that the plaintiff had received the release from him. He made an effort, however, in court, at the time of the foreclosure proceedings, as is admitted by his counsel, to have the mortgage reformed so as to include the property in question, but failed in such effort. Some time after the foreclosure of the mortgage the plaintiff ascertained the facts so withheld from her by Clark, and thereupon demanded a return of the money which she had paid him for the release, which demand was refused; and she was then, for the first time, informed that he had placed that money to the credit of the mortgagor. It will be noticed that Clark discovered the mutual mistake between the parties before the mortgage was foreclosed, at a time when he was yet in a position to return the money paid by mistake for the release, and recover it from the mortgagor, and thus, without loss to himself, save the plaintiff from loss, it not appearing from the record that the mortgagor was unable to pay his debts. Failing to inform the plaintiff of the discovery of their mutual mistake, he rendered himself more negligent and more at fault than the plaintiff was, and should, therefore, not be heard to complain when he is asked to refund the money. From the facts and circumstances as they appear from the record in this case, I am unable to see upon what principle of justice and fair dealing the appellant can be permitted to prevail. I therefore dissent.