THE MAYOR AND COUNCIL OF THE BOROUGH OF VINE-
　　LAND, PLAINTIFF-APPELLEE, v. THE FOWLER
　　WASTE MANUFACTURING COMPANY, DEFENDANT-
　　APPELLANT.

Argued March 18, 1914—Decided June 15, 1914.

The doctrine of equitable estoppel is essentially one of "good con-
　　science." Where, therefore, one with convenient opportunity to
　　ascertain the real facts by the exercise of reasonable diligence,
　　neglects to do so, he will not be permitted to defeat another's
　　just rights by urging an equitable estoppel based upon his having
　　acted to his disadvantage in reliance upon that other's innocently
　　mistaken representation regarding those facts, where such repre-
　　sentation was not made for the purpose of inducing him so to act.

On appeal from the Cumberland Circuit Court.

For the defendant-appellant, *Charles V. D. Joline* (*Albert
W. Sanson,* of the Philadelphia bar, on the brief).

For the plaintiff-respondent, *Henry S. Alvord.*

The opinion of the court was delivered by

WHITE, J. The plaintiff-appellee, during a period of two
years, rendered monthly bills to the defendant-appellant for
electric current supplied the latter for motive power, &c., in
its cotton waste factory at Vineland, which bills were duly
paid and receipted. It was then discovered that through a

mistake on the part of the plaintiff's chief electrician in failing to multiply the meter face-readings by ten, the bills so rendered and paid were for only one-tenth of the amount actually due by the defendant to the plaintiff. This suit is for the other nine-tenths, the same allowance of discounts being made as would have been credited if the proper bills had been originally rendered and promptly paid, and no interest or penalty for delay being asked.

The defence is a claim of equitable estoppel, and in substantiation of this claim, it was testified by defendant's president that the amounts actually paid in response to the erroneous bills were used by the defendant in calculating its overhead expenses in arriving at the cost of its production and fixing the selling price to be charged therefor, and it was claimed that the defendant having during this period of two years sold its product at prices based upon this cost calculation, it would now be inequitable to subject it to the loss incident to a change in its production cost because of a mistake for which it was in no way accountable. It is claimed, therefore, that the court should have directed a verdict in favor of the defendant.

The difficulty with this claim is, that, quite apart from the rather indefinite and general character of this evidence, the president of the defendant company also testified that they sold their products for all that they could get for them, and that the defendant company was at the end of the period involved, in charge of a committee of its creditors; so that it became a jury question to decide whether the prices at which defendant sold its products were in fact affected at all by plaintiff's error. This question was submitted to the jury by the learned trial judge, and in this we think there was no error.

It is urged that this view conflicts with that laid down by the Supreme Court in *Central Railroad Co. v. MacCartney,* 68 *N. J. L.* 165, but this is not so. In that case a common carrier released its freight lien upon the goods carried by delivering them to the consignee with a freight bill, which

through error was for less than it should have been. The consignee deducted the amount of the freight bill so rendered from the price it had agreed to pay the consignor and remitted to him the remainder. The carrier then discovered its error and claimed additional freight charges from the consignee. The court held there was an equitable estoppel, because the consignee not being liable for the cost of shipment as such (that being the obligation of the consignor), but only upon his implied contract to pay resulting from the release of the carrier's lien at his request, it would be inequitable to impose upon him a loss resulting from an error of the carrier about which he neither knew, nor had convenient opportunity to know, and upon the faith of which he had settled with the consignor.

The defendant further contends that conceding the correctness of the court's ruling upon the foregoing point, there was, nevertheless, error in that portion of the charge to the jury wherein they were told that if the defendant had "a convenient opportunity by the exercise of reasonable diligence," to ascertain the true facts with regard to the amount of electricity it was using, and, consequently, what should have been the correct amounts of the bills as they were rendered, it could not invoke an equitable estoppel even should the jury find that it had been misled to its injury in the manner claimed by the erroneous bills. Of course, if there were any way of knowing that the jury found that the defendant was not in fact injured, as they in all probability did, this point would have no importance, but as their verdict may mean that they found that the defendant was injuriously misled by the error, but that he had convenient opportunity with the exercise of reasonable diligence to discover the error before being injured, it becomes important to examine the accuracy of this instruction. Under the peculiar facts of this case we do not think it erroneous.

In cases of this kind the doctrine of equitable estoppel rests upon the general principle that when one of two innocent persons, each guiltless of any intentional or moral wrong, must

suffer a loss, it must be borne by that one of them whose erroneous conduct, either of commission or omission, was the cause of the injury. The doctrine, however, is, in its nature, essentially one of equity—that is, of good conscience, and as the one party may not assert his true right to the injury of the other where his error has so misled the other that good conscience forbids him so to do, so on the other hand the other party may not in good conscience urge, in order to defeat another's just rights, that he was misled by that other's error, when in fact the error complained of was not intended for him to rely and act upon, and the real facts were equally or sufficiently open for his convenient ascertainment, but he has chosen not to take the trouble to observe them.

Thus, in *Pom. Eq.*, § 810, it is said: "If, at the time he acted, such party (the one claiming the estoppel) had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge, so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment;" and to the same effect, in *Cyc.*: "As a corollary to the proposition that the party setting up an estoppel must have acted in reliance upon the conduct or representations of the party sought to be estopped, it is, as a general rule, essential that the former should not only have been destitute of knowledge of the real facts as to the matter in controversy, but also should have been without convenient or ready means of acquiring such knowledge." 16 *Cyc.* 738, 741, and numerous cases there cited.

This doctrine, of course, has no application in a case of what amounts to actual fraud, as where one owning land stands by and in silence allows another to improve it, knowing all the while that the other party is *acting in erroneous belief* that the land belongs to him, as in *Sumner v. Seaton*, 47 *N. J. Eq.* 103. In such a case it is no answer to say that the title record was open equally to both parties.

Nor will the doctrine apply where the representation was made with the clear understanding upon both sides that it

should be accepted and exclusively relied and acted upon in the way it was acted upon, for under such circumstances the party estopped cannot claim that the other party was negligent in treating the representation in the manner agreed upon by both. For instance, take the case of a jobber, who buys coal from a mine operator under an agreement that it shall be shipped from the mine to the jobber's customers in carload lots and billed at once to the jobber at the railroad weight so that he may use that weight in billing his customers. Under such circumstances, a jobber who had settled with his customers in reliance upon the weights so billed to him by the operator, would not, I think, be precluded from urging an equitable estoppel in case of error in such weights, by the fact that he might have made inquiry of the railroad and ascertained the correct weights.

But where, as·here, the only purpose of the representation contained in the erroneous bills and receipts was to demand and acknowledge payment of a debt, it seems difficult to see just how it is to operate as an estoppel in the manner claimed (*Kuhl* v. *Mayor of Jersey City*, 23 *N. J. Eq.* 84), and, certainly, if the party claiming the estoppel had convenient opportunity, by the exercise of reasonable diligence, to ascertain the true facts before being misled, and neglected such opportunity, he cannot, in good conscience, throw upon the other a loss to himself which resulted from his own carelessness quite as much as from the other's innocent mistake.

The evidence showed that the meter, by which the consumption of current was measured, while the property of the plaintiff, was on the defendant company's premises and open to free inspection by their officers and employes, and there was some testimony that no particular technical knowledge was required to read it. There was evidence, therefore, justifying the instruction complained of, and we think that it expressed the true principle under the circumstances involved.

It is further urged that the learned trial judge erred in permitting, over objections, certain questions to be asked on cross-examination, tending to show the amount of the de-

fendant company's authorized and outstanding capital, and of its dividends and profits, or, as it turned out, the absence of them, and the volume of its business and the salary paid its president during the period in question, and that at the end of that period it was in charge of a committee of its creditors. We do not think there was injurious error in these rulings. The important fact involved in the estoppel claim was that defendant would have established and successfully charged higher prices for its commodities than it did establish and charge if the error complained of had not occurred. All of the matters inquired about in the questions objected to, tended to show an actual condition of affairs making it most unlikely that defendant would have done anything of the kind, but that on the contrary, if it could have sold its products at a higher price than it did, that there were ample and much more urgent reasons for so doing than the one which it is now claimed would, if it had known of it, have caused it to do so. The fact that defendant was unable to successfully raise its prices high enough to meet the demands of the big reasons for so doing which it knew did exist, was a fair ground from which a jury might properly conclude that its failure to raise these prices was not because of its ignorance of the small reason of which it did not know. We think the evidence was properly admitted.

The judgment is affirmed.

*For affirmance*—The Chancellor, Chief Justice, Trenchard, Bergen, Minturn, Kalisch, Bogert, Vredenburgh, White, Heppenheimer, JJ. 10.

*For reversal*—None.