## I. X. L. STORES CO. v. SUCCESS MARKETS.
No. 6146.   Decided December 28, 1939.   (97 P. 2d 577.)

*Ingebretsen, Ray, Rawlins & Christensen,* of Salt Lake City, for appellant.

*E. A. Rogers* and *H. G. Metos,* both of Salt Lake City, for respondent.

MOFFAT, Chief Justice.

On the third day of October, 1934, the I. X. L. Stores Company, plaintiff and respondent, hereinafter referred to as the Lessor, entered into a lease in writing whereby the first or street floor of the Community Market Building, located at 49 East Broadway, Salt Lake City, Utah, was leased and let unto the defendant and appellant, hereinafter referred to as the Lessee for a term of five years, at stated rentals.

One of the provisions of the lease read that the Lessee shall pay

"all water rentals, all light, all electric light and electrical charges and all power charges incurred in the operation of the electric compressor. Said rates, charges and expenses to be paid promptly before the same become delinquent, and that in the event the lessor is compelled to pay the same, or any part thereof, that the lessee will promptly repay the same unto the lessor, together with interest thereon at the rate of 1% per month until paid."

From November, 1934, to February, 1937, Lessor presented its monthly statements for electric current, light and power to the Lessee. The Lessee promptly paid the charges made, as per the statements presented.

The electrical current for the entire building goes through one large meter which is read by the Utah Power and Light Company and from this reading the charges for the entire building are made by the Utah Power & Light Company to the Lessor. The Lessor distributes the power to its various tenants, charging in various manners, i. e., some tenants have the electrical power used on the premises leased by them included in the monthly rentals, some were charged five cents per kilowatt hour, while the power used by the Lessee was sold to the Lessee at the regular commercial rate, two and one-half cents per kilowatt hour.

There are four power lines into the premises leased by the Lessee. On each of these lines is a separate meter. To obtain the number of kilowatt hours of electrical current used by the Lessee it is necessary to make the readings and add the totals of the four meters. On the face of one of these four meters, is a notice in clear and discernible writing, which may be easily read by one reading the meters, which states: "Kilowatt hours multiplied by 10." The number of kilowatt hours registered by the figures on the face of the meter must be multiplied by ten, as on this meter only one tenth of the electrical current passing through the meter registers. The readings from the other three meters did not need to be multiplied by ten.

The building engineer, an employee of the Lessor, together with a representative of the Lessee, would accompany another representative of the Lessor to make the readings on the first of each month. The building engineer would read the meters and call the readings to the other two, who would write the readings in their respective books. The engineer knew that to obtain the correct amount of electrical current used through this line it was necessary to multiply the reading by ten. The meter was properly read, the kilowatt hours were not calculated according to the instructions on the face of this particular meter. The reading not having been multiplied by ten resulted in the Lessee only being charged

for one-tenth of the electrical current actually used through this particular power line. The other two representatives did not know, nor did they notice the instruction, that the reading from this meter had to be multiplied by ten. Each party acknowledges good faith on the part of the other.

The Lessor presented the Lessee, in January, 1937, with a supplemental bill in the principal amount of $2,943.68, for the balance of the power used by the Lessee. The Lessee refused payment.

This action was filed by the Lessor against the Lessee for the difference between the power paid for and the power consumed, plus interest at the rate of one per cent per month for failure to pay the charges made, a sum total of $3,930.73, plus six per cent per annum from the date of the filing of the complaint.

The Lessee in his answer sets forth that the Lessee has subleased portions of the premises and has considered the cost of power in the fixing of the monthly rentals; that the agent of the Lessor knew the manner of obtaining the correct amount of power used and did not apply such knowledge and the agent of the Lessee did not have such knowledge; that because of the statements presented the Lessee paid $485.22 in federal and state taxes and that had the charges been properly made such sum would not have been due and owing because the net profit would have been reduced; the sum of $6,216.44 was paid as bonuses to employees in addition to the regular wages and salaries; and that one section of the premises was subleased for $150 monthly rentals, but had the actual cost of the power been known it would have rented for the sum of $200 per month, and by virtue of such facts and reliance upon the representations of the Lessor the Lessee has been damaged in the sum of $5,400.

The first counterclaim alleged the Lessee had paid $5,529.55 for power and had not been credited with the five per cent discount for prompt payment allowed by the Utah

Power & Light Company, which the Lessor had received and which the Lessee now claims plus interest at the rate of eight per cent per annum.

The second counterclaim alleged the Lesseee had subleased a portion of the premises for $50 a month less than the said portion would have been leased for had the true facts been known and the Lessee has been damaged thereby in the amount of $5,400. Eighteen months passed between the time when the demand for payment was made and suit was filed.

Lessee defends upon the grounds the Lessor is estopped and foreclosed from enforcing the claim.

A jury had been empaneled and sworn, but at the conclusion of the evidence the jury was discharged upon stipulation that the matter should be submitted to the court upon the record. The court thereupon found, among other things, that the Lessor and the Lessee entered into a written lease whereby it was agreed that the Lessee would pay all water rentals and electrical charges and that if it failed to do so, such charges were to be paid by the Lessor and that the Lessee would repay the same with interest.

Lessee has assigned several errors, all of which are details aimed to present, the one question of law argued by the parties, which question is: Is the Lessor estopped to assert its claim against the Lessee upon the facts disclosed by the record in the cause? In another form, are the findings and judgment of the trial court supported by the evidence?

Representatives of both the Lessor and the Lessee were present at the time of the reading of the meter. A representative of the Lessor made the reading, another representative of the Lessor and the representative of the Lessee accepted such readings as being correct and wrote the called readings in their respective books. The readings were correct. The mistake was made in that the one reading the meter, a representative of the Lessor with

knowledge of the necessity of multiplying the finding by ten to obtain the correct number of kilowatt hours of electrical current used, did not inform the other representatives of this necessity. Those calculating the kilowatt hours did not know the reading of this one meter was required to be multiplied by ten. The opportunity to obtain such information was before each of the representatives. It is suggested that the building engineer accompanied the other representatives only to accommodate them and was under no duty to do so.

Was the Lessee under a duty to check the readings of the meter? Was the representative of the Lessee accompanying the representative of the Lessor, who was under the duty to make the readings, any more binding on the Lessee than the accompanying of the building engineer was on the Lessor? Both were acting in a voluntary capacity and neither was under a legal obligation to do that which they did.

The lease imposes upon the Lessee the duty of paying

"all water rentals, all light, all electric light and electrical charges and all power charges incurred in the operation of the electric compressor. Said rates, charges and expenses to be paid promptly before the same become delinquent, and that in the event the Lessor is compelled to pay the same or any part thereof, that the Lessee will promptly repay the same unto the Lessor, together with interest thereon at the rate of one per cent (1%) per month until paid."

No account is due until the statement is rendered. The reading of the meter by the Lessee would never create a liability. The Lessor is to submit to the Lessee the charges and the Lessee is responsible for their prompt payment. There is no contractual obligation imposed on the Lessee to read the meter or to check the readings any more than there was that the building engineer should accompany the representatives while reading them. If Lessee is bound by their voluntary acts then the Lessor is bound by their voluntary acts.

The number of kilowatt hours was calculated by the Lessor. The readings were correct. Did the Lessee assume the duty of calculating the number of kilowatt hours? Is that the duty of each subscriber of power, water, gas, etc., to determine his individual account and check if the utility has figured correctly the amount of power, water, gas, etc., used when a statement is submitted to them? The utility is under the obligation to calculate the bills properly. The submission of the statement is not final and where error has been made a bill for the balance may be presented. 1 Am. Jur. p. 285, Sec. 30; *Allegheny County Light Company* v. *Thomas*, 31 Pa. Super. 102.

May such a statement be final?

When one of two innocent persons, each of whom is guiltless of an intentional moral wrong, must suffer a loss, it should be borne by that one of them who by his conduct has rendered the injury possible. *Thomasson* v. *Walker*, 168 Va. 247, 190 S. E. 309; 312, 110 A. L. R. 593; 10 R. C. L. 695; *Richey* v. *Clark*, 11 Utah 467, 40 P. 717; *Mayor and Council of Borough of Vineland* v. *Fowler Waste Mfg. Co.*, 86 N. J. L. 342, 90 A. 1054, L. R. A. 1915B, 711.

The doctrine that when the real facts were equally or sufficiently open for his convenient ascertainment, but he has chosen not to take the trouble to observe them, he must suffer the loss is not applicable in the instant case as both parties had equal opportunity and with reasonable diligence could have determined the true conditions.

The estoppel here relied upon is known as an equitable estoppel, or estoppel in pais. The law upon the subject is well settled. The vital principle is, that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. This remedy is always applied so as to promote

the ends of justice. It is available only for protection and cannot be used as a weapon of assault. *Dickerson* v. *Colgove,* 100 U. S. 578, 25 L. Ed. 618; *Malloy* v. *City of Chicago,* 369 Ill. 97, 15 N. E. 2d 861.

Was the change of position sufficient to warrant the application of the doctrine of equitable estoppel or would its application in the present case be more in the nature of a sword cutting off the rights of the Lessor who has served the Lessee with power and is now attempting to obtain payment?

The Lessee paid income taxes, state and federal, in the total amount of $485.32 relying on an ascertained profit which would have been $2,943.68 less had the true facts been known. Based upon such inflated profit, bonuses were given to the employees in the total amount of $6,216.44, which bonuses would have been less had the true profit been known. A portion of the store was leased for what might have been determined "all the tenant was willing to pay," $150 per month, but such rental was increased in the amount of $10 per month by agreement when the true cost of the electrical power was ascertained, even after the long term lease had been signed.

A detriment or damage was suffered by the Lessee due to the mistakes in the statements submitted by the Lessor. The amount of the damage or detriment is not shown. The evidence does not indicate how much less the taxes paid the federal and state government would have been had the true facts been known, nor does it show how much less, if any, the bonuses paid the employees would have been had the true facts been known. There is no evidence that the subleased premises were sought after at the rental of $200 per month and there is evidence that the rent was lowered to $150 per month to enable the sublessee to remain. The damage or detriment caused by the change of position on the part of the Lessee is speculative.

The judgment of the lower court is affirmed. Costs to Respondent.

LARSON, McDONOUGH, and PRATT, JJ., concur.

WOLFE, Justice (concurring).

I concur in the result. I arrive at the same result on a different basis. The situation is one where the plaintiff innocently failed to bill the defendant for the full amount for which defendant was liable under its contract. Defendant innocently accepted the billing as correct. One who fails to bill for the full charge by error may afterward bill for the difference, even if the failure is due to negligence, be it not too great. If the debtor assumes the bill to be correct and acts on that assumption *to his injury*, where he shows that acting on the assumption was reasonable, he may offset against the claim for the balance due, the damages he has suffered as a natural and proximate result of acting on the assumption. This I think is not on the principle of estoppel but on the principle that where both are innocent, he whose actions have caused the other to act to his detriment must suffer the loss caused to the other. *Anfenson* v. *Banks*, 180 Iowa 1066, 163 N. W. 608, 617, L. R. A. 1918D, 482. I doubt whether estoppel is applicable because plaintiff did nothing with the intent, real or apparent, of inducing a change in the position of the defendant. *Malloy* v. *City of Chicago*, 369 Ill. 97, 15 N. E. 2d 861; *Brant* v. *Virginia Coal & Iron Co.*, 93 U. S. 326, 335, 23 L. Ed. 927; 10 R. C. L. Sec. 23 at p. 695; 21 C. J. Section 122 at p. 1119; Bigelow on Estoppel, 6th Ed., p. 774.

*Borough of Vineland* v. *Fowler Waste Mfg. Co.*, 86 N. J. L. 342, 90 A. 1054, 1055, L. R. A. 1915B, 711, is a "pat" case. In this case the seller's employee failed to multiply the meter face reading by ten and, consequently, for two years bills for only one-tenth of the electric current consumed were sent to the buyer. These bills were paid, but the seller later billed the buyer for the other nine-tenths. The buyer pleaded equitable estoppel because buyer used the amounts paid, in computing its overhead expense to arrive at the cost of produc-

tion and to fix the selling price for its goods. Buyer alleged that to allow seller to recover the nine-tenths would subject buyer to a loss incident to the change in production cost which change was the result of a mistake for which it was in no way accountable. The court held:

That a "party may not in good conscience urge, in order to defeat another's just rights, that he was misled by the other's error, when in fact the error complained of was not *intended for him to rely and act upon*, and the real facts were equally or sufficiently open for his convenient ascertainment, but he has chosen not to take the trouble to observe them. * * *

"Where, as here, the only purpose of the representation contained in the erroneous bills and receipts was to demand and acknowledge payment of a debt, it seems difficult to see just how it is to operate as an estoppel in the manner claimed (*Kuhl* v. *Jersey City*, 23 N. J. Eq. 84)." (Italics added.)

See, *Allegheny County Light Co.* v. *Thomas*, 31 Pa. Super. 102; *Union Electric Light & P. Co.* v. *Surgical Supply Co.*, 122 Mo. App. 631, 99 S. W. 804. But see *Royal Electric Co.* v. *Davis, Rap. Jud. Quebec* 9 B. R. 445.

Therefore, defendant, in order to offset his damage due to the other's mistake, must set them up not as estoppel but as a counterclaim.

In this case, defendant set up one counterclaim for allowance of the five per cent discount which the Utah Power & Light Company gave the plaintiff. It was allowed by the court. He set up another counterclaim for loss of rentals to a sublessee. This was disallowed because the court found that it did not appear that he suffered any such loss as the proximate and natural consequence of the plaintiff's mistake. No counterclaim for increased State and Federal income taxes which were paid by reason of a supposed greater net income was pleaded, except by way of estoppel; nor was any counterclaim set up showing loss by reason of payment of increased bonuses to workmen due to supposed greater net profits than were actually earned. It would seem that had there been the increase in taxes paid because of the mis-

take, the amount of such increase might have been mathematically determined. Perhaps, also, some direct relationship between the bonuses and the apparent net income might have been computed and proved. But since no counterclaims were set up for affirmative judgment for those items, and they were pleaded only to avoid the claim of plaintiff, and called estoppel, no proof on these points could be introduced.

Because I think this whole case rests on the principle that he who innocently fails to bill another for the proper amount can, unless there is gross negligence, bill for the remainder, subject to the debtor's right to show that his position has been changed by reasonable reliance on the correctness of the bill regardless of any intrusion of the principle of estoppel, I also think it unnecessary to discuss the question of the duty of either party to this transaction as regards checking the meter or the binding effect of the failure of the representative of either correctly to read or disclose the true method of making readings.

For the above reasons I think the court's findings and judgment correct and for those reasons I concur in the affirmance of the judgment.