EQUILEASE CORPORATION, a New York Corporation, Plaintiff–Appellee,

v.

John G. HENTZ, Jr. et al., Defendants and Third Party Plaintiffs–Appellants,

v.

Lester LANDO, Third–Party Defendant–Appellee.

No. 78–3490.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1981.

Dayton Logue, Julian Bennett, Panama City, Fla., for defendants and third party plaintiffs–appellants.

Harry Lewis Michaels, Tallahassee, Fla., for Equilease Corp.

Before THORNBERRY, ANDERSON and THOMAS A. CLARK, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

This is a diversity of citizenship action by the appellee Equilease Corporation (Equilease) to recover $100,665.40 which it mistakenly paid for the benefit of the appellants, John G. Hentz, Jr., Ruth A. Hentz, John Leslie Hentz and Frances H. Hentz (hereinafter collectively referred to as appellants). The district court, following a non-jury trial, found that the appellants had been unjustly enriched by the payment and ordered restitution; however, the court found in favor of the appellants' third party claim against Lando. On this appeal only the district court's holding requiring appellants to repay Equilease is at issue.[1] We reverse this holding.

## I. FACTS

The facts, though complex, are for the most part undisputed. Prior to October, 1973, the appellants owned a dairy farm located in Washington County, Florida. Marianna Production Credit Association ("MPCA") held a mortgage on the farm securing a renewable loan account, which in October, 1973, had a balance of approximately $300,000. On October 11, 1973, the appellants sold the farm and equipment to Dr. Lester Lando at a price of $1,250,000. In return, Lando paid a sum of money and agreed to assume payment of appellants' real property mortgages to MPCA and Mutual of New York (MONY). Lando also agreed to pay the appellants $1,500 per month. This payment was consideration for appellants allowing another farm owned by appellants in Bay County, Florida, to remain encumbered by the mortgages to MPCA and MONY assumed by Lando.

These two mortgages were secured by the Washington County farm and the Bay County farm. Lando also executed a note for $300,000, the unpaid balance of the purchase price. The note and other obligations were secured by a mortgage on the real estate and a security agreement on the equipment at issue here, both in favor of the appellants. The mortgage was filed with the Clerk of the Circuit Court in and for Washington County. A financing statement covering the equipment was filed in the office of Secretary of State of Florida but was not filed in Washington County, as required by Florida law, until much later, i. e., June 20, 1975.

On January 21, 1974, Lando and his brother Solomon Lando sold the farm equipment to Tri–Continental Leasing Company; Tri–Continental, in turn, leased the equipment back to the Landos. One week later, Tri–Continental assigned the lease to the appellee, Equilease Corporation. Equilease took a security interest in the equipment.

Although a record search commissioned by Equilease revealed no prior liens on the equipment, MPCA had informed Tri–Continental and Equilease that it held a security interest in the equipment. In fact, MPCA had only a mortgage on the realty.[2] The Landos directed Tri–Continental to pay a portion of the proceeds of the equipment sale to MPCA "to satisfy recorded lein(s) [sic] covering the equipment." (Plaintiff's exhibit 1). Tri–Continental then directed Equilease to pay a portion of the proceeds of the sale to MPCA as Lando had directed, and the balance of the proceeds to Lando. (Plaintiff's exhibit 2)[3] Thereupon, Equi-

---

1. However, because we reverse, appellants are not required to repay Equilease, and accordingly are no longer entitled to reimbursement from Lando.

2. Although our search of the record reveals that at one time MPCA had a security agreement and a financing statement covering the equipment, all parties are in accord that MPCA did not have a security interest in the equip-

ment at the time of the assignment from Tri–Continental to Equilease or at the time of the payment by Equilease.

3. The body of the letter from Tri–Continental to Equilease is as follows:

"Gentlemen:
With reference to your purchase of the lease and the equipment therein described from us, we hereby irrevocably direct you to pay from

lease paid $100,665.40 to MPCA and paid the remainder of the proceeds, approximately $25,000, to the Landos. MPCA informed the appellants of the payment and the money was used to satisfy appellants' obligation to MPCA.

Lando defaulted on his obligations to the appellants and they filed suit in the Circuit Court in and for Washington County, Florida, for foreclosure of their mortgage and security agreement. A judgment of foreclosure was entered and appellants acquired title to the property at a public auction; however, Lando was given credit for the $100,665.40 paid by Equilease to MPCA.

Upon discovering that MPCA did not have a security interest in the equipment, Equilease filed the instant suit to recover the money it paid to MPCA for appellants' benefit. The district court, without a jury, found that the payment was made as a result of a mistake of fact and that the appellants had been unjustly enriched by the payment. The court concluded that equity required that the appellants make restitution of the money.

## II. DISCUSSION

This is a diversity case in which the substantive law of Florida applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Florida law, a plaintiff may recover money paid by mistake of fact to a defendant if, in equity and good conscience, the defendant should not be allowed to keep the money. *See Moss v. Condict*, 154 Fla. 153, 16 So.2d 921 (1944); *Central Bank & Trust Co. v. General Finance Corp.*, 297 F.2d 126 (5th Cir. 1961); 11 Fla.Jur.2d, *Contracts* § 242. The form of such a cause of action is alter-

natively referred to as one for restitution, unjust enrichment, quasi–contract, or an action for money had and received. By whatever name, the theory of recovery is a creature of equity and governed by principles of equity. Consequently, restitution may be denied where circumstances make it unfair or unjust to require the payee or recipient to repay the money or benefit conferred.

The appellants raise two well–known defenses to an action for restitution. First, they allege that they received the payment in good faith in partial satisfaction of a valid claim against Lando. Second, they argue that they have changed their position in reliance on the payment by crediting it toward Lando's obligation.

It is well settled under Florida law that money paid under a mistake of fact cannot be recovered where the payee "received it in good faith in satisfaction of an equitable claim, nor where it was due in honor and conscience." *Pensacola and A. R. Co. v. Braxton*, 34 Fla. 471, 16 So. 317 (1894). The rule enjoys universal acceptance. *See Strubbe v. Sonnenschein*, 299 F.2d 185 (2d Cir. 1962); *Restatement of Restitution* §§ 13 and 14; 58 C.J.S., *Money Received*, § 28. "In situations of endless variety, courts have denied restitution because money paid by one party was received in good faith by the other, in satisfaction of or as security for a valid claim against a third person." III G. Palmer, *The Law of Restitution*, § 16.6 at 490–91 (1978) (footnotes omitted). It is patently unfair to require an innocent payee who has received and used the money to satisfy a debt to repay the money. In this case, the undisputed facts show that Equilease owed the

the proceeds of said sale $125,000.00 to Dr. Lester Lando and Dr. Solomon Lando payable as follows:

    A. $108,313.32 to the Marianna Production Credit Association plus a per diem rate of $32.36 for each day after February 15, 1974, in connection with the pay proceeds letter from Dr. Lester Lando and Dr. Solomon Lando which is attached hereto.

    B. The balance of the $125,000.00 to be paid to Dr. Lester Lando and Dr. Solomon Lando."

Although the letter directs Equilease to pay $108,313.32 to MPCA, it actually paid only $100,665.40. Equilease apparently relied on MPCA's representation that the latter figure represented the amount of its lien.

money to Lando either as the purchase price for the equipment or as loan proceeds. At Lando's request and under the mistaken belief that MPCA had a lien on the equipment, Equilease paid the $100,665.40 to MPCA. MPCA in turn used the money to retire the appellants' debt to it[4] and the appellants credited the payment toward satisfaction of Lando's admittedly valid obligation to appellants. The payment was not gratuitous. The situation is the same as if Equilease had paid Lando and Lando had used the money to help satisfy his obligation to appellants. Under those circumstances, Equilease would have absolutely no claim against the appellants, because the appellants would have had a right to receive the money. Therefore, we believe that the facts demonstrate that appellants received the payment in good faith in partial satisfaction of a valid claim against Lando. They fall within the claim of right defense, i. e., they had a sufficient legal or equitable claim so that equity will not compel restitution.[5]

■■■ The second defense is that the appellants changed their position in reliance

upon the payment of money. Change of position or detrimental reliance is also a defense to an action to recover money paid by mistake if the circumstance renders it inequitable to require restitution. *Goodbody & Co., Inc. v. Sultan*, 346 F.Supp. 1375 (S.D.Fla.1972); *Langbein v. Comerford*, 215 So.2d 630 (Fla.App.1968); Restatement of Restitution, § 142; *Annot.* 40 A.L.R.2d 997 (1955). In reliance upon the payment, the appellants credited Lando for the payment at the foreclosure on the farm. There is some question as to whether the mere bookkeeping act of crediting a partial payment to the payor's account is a sufficient change in position to make restitution inequitable. *See* III G. Palmer, *The Law of Restitution*, § 16.8 (1978); *Annot.* 40 A.L.R.2d 997, 1016 (1955). In this case, however, the appellants have irrevocably changed their position by crediting Lando with the payment so that the judgment of foreclosure did not include the $100,665.40. *See Richey v. Clark*, 11 Utah 467, 40 P. 717 (1895).[6] We conclude that it would be inequitable to require the appellants to make restitution.

We have examined the considerations which would make restitution inequitable

4. The court perceives no reason to treat this indirect payment from Equilease to the appellants different from the direct payments characteristic of the claim of right decisions. Equilease clearly contemplated that it was paying MPCA in its capacity as a creditor and mortgagee of appellants.

5. Some cases have suggested that there must be a complete satisfaction of a debt to establish the claim of right. We have found no Florida decisions which address this narrow issue. One commentator favors applying the defense to a partial as well as a complete satisfaction of the debt. III G. Palmer, *The Law of Restitution*, § 16.8 (1978). Since restitution is an equitable remedy, and since the appellants clearly had an equitable right to the payment at issue here, and since, as we conclude below, there are no equities in favor of Equilease, we have no hesitation in concluding that the equitable remedy of restitution is inappropriate here.

6. The facts in *Richey v. Clark* are remarkably similar to those in the instant case. One Stowell sold a parcel of land to Swan and took a note and mortgage. Stowell then assigned the note and mortgage to Clark. Richey purchased

several tracts of land from the parcel from Swan. Both Richey and Swan believed the tracts to be subject to the mortgage held by Clark (in fact due to a mistake in the mortgage, they were not). Richey wanted the tracts to be clear of encumbrances and paid Clark $400 for a release of the tracts. Clark, like the appellants herein, credited Swan with the $400. Clark was later forced to foreclose on the Swan property. The judgment of foreclosure did not include the $400 payment which was considered a payment on the note. Thereafter, Richey learned of the mistake in the mortgage and sued to recover the $400 from Clark.

The Supreme Court of Utah held that the strongest reason for denying restitution was Clark's change in position, i. e., crediting Swan with the payment. The court concluded that the judgment of foreclosure fixed the rights between Clark and Swan. Richey's payment had induced Clark to credit Swan and forego inclusion of the $400 in the judgment of foreclosure. To the same effect, see also *Restatement of Restitution*, § 142, Comment b, illustration 5.

from the appellants' point of view, as the cited authorities suggest is proper. However, since restitution is an equitable remedy, common sense suggests that we also examine the equities with respect to Equilease. We note that Equilease did not make a mistake in paying the money, but rather made a mistake as to the proper payee. It is undisputed that Equilease was going to pay the money at issue to Lando if it had not paid MPCA. Therefore, to restore the parties to the status quo would require the appellants to repay Equilease *and* would require Equilease to pay the money to Lando. Equilease has neither more nor less money as a result of the mistake. There is no equity at all supporting a required repayment to Equilease.[7] Moreover, if we focus on the equities as between Lando and appellants, it is clearly not equitable to make appellants repay Lando because Lando owed that money and more to appellants and Lando knew he had given appellants a security interest in the very equipment he was trying to sell or mortgage to Equilease.[8]

REVERSED.

7. The only possible equity between Equilease and the appellants relates to whether or not the appellants have been unjustly enriched by both receiving the payment and taking the equipment on foreclosure. The appellants respond that Equilease has a prior lien on the equipment which it has not yet attempted to assert. Although the appellants took a security interest in the equipment before Equilease acquired an interest therein, they did not perfect the lien until June 20, 1975, by a proper filing in the Washington County Circuit Court. Appellants' counsel has conceded in briefs and oral argument that Equilease's claim to the equipment is superior to appellants' claim. The appellants are merely, and properly, pursuant to the foreclosure of appellants' own inferior lien, holding the equipment until Equilease takes some action to secure it. That case is not before us.

We do not believe that appellants have been doubly benefited. Moreover, the foreclosure by appellants has not affected any interest Equilease may have in the equipment.

8. Seen in this light, the mistake in this case might be more of an illusion than a mistake, or at least is a mistake of a lesser order. Lando obviously knew he had granted a security interest in the equipment to appellants. As part of the transaction, he assumed appellants' mortgage to MPCA, and was actually making payments to MPCA. Although perhaps still a mistake, it is certainly a less significant mistake for Lando to direct payment to be made to MPCA, when he should in fact have directed payment to be made to appellants.