# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

MAY 3, 2006

**Before**

Hon. Joel M. Flaum, *Chief Judge*

Hon. Richard A. Posner, *Circuit Judge*

Hon. Frank H. Easterbrook, *Circuit Judge*

Hon. Kenneth F. Ripple, *Circuit Judge*

Hon. Daniel A. Manion, *Circuit Judge*

Hon. Michael S. Kanne, *Circuit Judge*

Hon. Ilana Diamond Rovner, *Circuit Judge*

Hon. Diane P. Wood, *Circuit Judge*

Hon. Terence T. Evans, *Circuit Judge*

Hon. Ann Claire Williams, *Circuit Judge*

Hon. Diane S. Sykes, *Circuit Judge*

No. 05-1130

FREEDOM FROM RELIGION FOUNDATION, INC., *et al.*,

*Plaintiffs-Appellants*,

v.

ELAINE L. CHAO, Secretary of Department of Labor, *et al.*,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
04 C 0381S—**John C. Shabaz**, *Judge*.

———————

## ORDER

On March 13, 2006, defendants-appellees filed a petition for rehearing with suggestion of rehearing *en banc*. A vote of the active members of the Court was requested, and a majority has voted to deny the petition.[Œ] The petition is therefore DENIED.

FLAUM, *Chief Judge*, concurring in the denial of rehearing en banc. Along with Judge Easterbrook, my vote to deny the petition for rehearing en banc is not premised upon a conclusion that the taxpayer standing issue as addressed in the panel opinion is free from doubt. Indeed, the position set forth in the dissent is one which could eventually command high court endorsement. However, the obvious tension which has evolved in this area of jurisprudence, as evidenced by the scholarly opinions of Judge Posner and Judge Ripple, can only be resolved by the Supreme Court. In my judgment, the needed consideration of this important issue by that tribunal would be unnecessarily delayed by our further deliberation.

---

[Œ] Chief Judge Flaum and Judge Easterbrook have written opinions concurring in the denial of the petition for rehearing *en banc*. Judge Ripple has written an opinion, which Judge Manion, Judge Kanne, and Judge Sykes have joined, dissenting from the denial of the petition.

EASTERBROOK, *Circuit Judge*, concurring in the denial of rehearing en banc. My vote to deny the petition for rehearing en banc does not imply that I deem the panel's resolution beyond dispute or the issue unimportant. To the contrary, the subject is both recurring and difficult, and there is considerable force in Judge Ripple's dissent, 433 F.3d 989, 997-1001 (7th Cir. 2006), and in the standing analysis of Judge Sykes's dissent from *Laskowski v. Spellings*, No. 05-2749 (7th Cir. Apr. 13, 2006), slip op. 19-28, which extends this panel's holding. Two divided decisions on related matters that put the judicial and the political branches of the federal government at odds imply the wisdom of further review. My vote to deny rehearing rests on a conclusion that this is not the right forum for that further deliberation.

The principal difficulty with arguments pro and con about taxpayer standing is that the doctrine is arbitrary. Taxpayers lack standing to complain about almost all expenditures. *Flast v. Cohen*, 392 U.S. 83 (1968), held that taxpayer suits about religious outlays are special but declined to overrule *Frothingham v. Mellon*, 262 U.S. 447 (1923), which holds that taxpayers lack standing to complain about public expenditures. To the extent that the Establishment Clause forbids taxation to support religion, people subject to the illegal levy may obtain relief, but plaintiffs in this litigation do not say that they have paid one extra penny because of the grant. Where's the concrete injury? The loss (if any) is mental distress that plaintiffs, who are bystanders to the challenged program, suffer by knowing about conduct that they deem wrongful. Article III does not permit courts to entertain such complaints. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); *Allen v. Wright*, 468 U.S. 737 (1984); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976); *United States v. Richardson*, 418 U.S. 166 (1974); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208

(1974). Cf. *Metro-North Commuter R.R. v. Buckley*, 521 U.S. 424 (1997). Yet *Flast* has so far resisted efforts either to cabin it or to incorporate its approach into a more general framework of justiciability.

Our panel's majority has concluded that the doctrine of taxpayer standing will be more logical if it covers administrative as well as legislative earmarks. I grant that proposition—but comprehensiveness and rationality are not this doctrine's hallmarks. Why may taxpayers complain about outlays of cash but not about a distribution of real or personal property? See *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). Cash may be exchanged for property or the reverse; a distinction between cash and property for the purpose of standing is illogical but embedded in the cases.

Why may taxpayers complain about modest expenditures (the grant in *Laskowski* was $500,000, or less than a cent per U.S. taxpayer) but not about slightly smaller ones? According to the panel, a complaint that the President used the State of the Union Address to promote religion is not justiciable. The panel dismissed a claim against the Secretary of Education that rested on the expense that the Secretary had incurred to deliver a speech. See 433 F.3d at 995-96. The total cost of presidential proclamations and speeches by Cabinet officers that touch on religion (Thanksgiving and several other holidays) surely exceeds $500,000 annually; it may cost that much to use Air Force One and send a Secret Service detail to a single speaking engagement. If money from the Treasury is to supply the identifiable trifle for standing, then the only tenable line is between $0 (no cost to taxpayers as a whole) and $1 (some cost, however dilute); yet the panel draws a line between $500,000 and $50,000 or $5,000 (even if there are lots

of speeches or proclamations at $5,000 or $50,000 apiece). Where is the coherence in such a doctrine? That no court is willing (yet!) to entertain a suit about a speech that costs $50,000 to draft, deliver, and distribute through the Government Printing Office—while adjudicating objections to $500,000 grants that do not cost the plaintiff even 1¢—suggests problems in *Flast*'s underpinning and application.

Perhaps Michael Newdow should have invoked his tax return, rather than his status as a father, to challenge the inclusion of "under God" in the Pledge of Allegiance. What is the price tag in both money and the opportunity cost of time to print many million copies of that phrase and read it daily in thousands of classrooms? As it was, however, the Supreme Court deemed his suit non-justiciable. See *Elk Grove Unified School District v. Newdow*, 542 U.S. 1 (2004).

But this arbitrariness is built into the doctrine as it comes to us. Nothing we can do would eliminate the tension between *Flast* and *Bowen v. Kendrick*, 487 U.S. 589 (1988), on the one hand, and *Frothingham* and *Valley Forge* (plus the many cases such as *Defenders of Wildlife*) on the other. The problem is not of our creation and cannot be resolved locally. There is no logical way to determine the extent of an arbitrary rule. Only the rule's proprietors can bring harmony—whether by extension or contraction—or decide to tolerate the existing state of affairs.

RIPPLE, *Circuit Judge*, with whom MANION, KANNE and
SYKES, *Circuit Judges*, join, dissenting from the denial of
rehearing en banc.  The Government has requested that the
court hear this case en banc. Because the decision of the
panel majority departs significantly from established
Supreme Court precedent and creates an inter-circuit
conflict, I believe that the Government's considered re-
quest reflects its serious concern about the impact of the
panel majority's holding on executive governance. Therefore,
I believe that the case should be set for rehearing en banc,
and that a decision be rendered that reflects the view of the
entire court. Indeed, because this case also reflects a view
about the nature of Article III judicial power, the case has
serious implications for judicial governance, and we, as
officers of that branch, have a special duty to ensure that a
decision expanding the authority that we claim for ourselves
represents the considered judgment of every judge on this
court. Such a review is especially appropriate when the
Government specifically charges, as it has here, that the court
has "greatly exceeded its authority by ignoring the Supreme
Court's own rules . . . and substituting its own views of what
the law rationally ought to be." Pet. Reh'g at 13.

The panel majority's opinion does not square with the
Supreme Court's taxpayer standing cases beginning
with *Flast v. Cohen*, continuing with *Valley Forge Christian
College*, and ending most recently with *Bowen v. Kendrick*.
In each of these cases, the plaintiffs' claims to taxpayer
standing turned on the strength of the nexus demonstrated
between their status as taxpayers and the challenged *congres-
sional* expenditure. In *Flast*, taxpayers had shown such a
nexus because they alleged that *Congress* had violated the
Establishment Clause by authorizing grants to parochial
schools, even though the money passed through an executive
agency. *Bowen* found a sufficient taxpayer nexus to challenge
the constitutionality of a *congressional* spending program that

allowed religious institutions to receive federal funds, even though the program was administered by the Secretary of Health and Human Services. By contrast, *Valley Forge* prohibited taxpayers from halting a purely executive decision to transfer surplus public land to a religious institution. What distinguished the *Valley Forge* plaintiffs from those in *Flast* and *Bowen* was that "the source of their complaint [was] not a congressional action, but a decision by [the executive agency] to transfer a parcel of federal property." *Valley Forge*, 454 U.S. at 479. In short, *Valley Forge* held that the constitutionally-required nexus between a plaintiff's status as taxpayer and " 'exercises of congressional power' " erodes without an allegation that *Congress* has violated the Establishment Clause. *Id.* (quoting *Flast*, 392 U.S. at 102).

Here, as in *Valley Forge*, the plaintiffs do not complain of any action taken by Congress. The plaintiffs never alleged that *Congress* violated the Establishment Clause by appropriating funds. Here, as in *Valley Forge*, there is no allegation that Congress authorized the challenged activities; and, as far as the record reflects, the challenged *executive* action involved no more incidental expenditure than the transfer of public land in *Valley Forge.* Nevertheless, the panel decision held that the plaintiffs had standing because the congressional appropriation was "necessary for the violation to occur," *Freedom From Religion Foundation, Inc. v. Chao*, 433 F.3d 989, 993 (7th Cir. 2006). Some expenditure of governmental funds is necessary for every executive action. That reality is present here as it was present in *Valley Forge.* However, the Supreme Court, in making an exception to usual standing rules for taxpayers has drawn a very clean line in order to avoid making the federal courts a forum for all sorts of complaints about the conduct of governmental affairs on no basis other than citizen standing. Abolishing or even diluting a standard so explicitly set by the Supreme Court simply is not an appropriate

decision for us to make. We have a duty to apply faith-
fully the precedent of the Supreme Court until that precedent
is overruled by the Supreme Court. *See State Oil Co. v. Kahn*,
522 U.S. 3, 20 (1997).

We also ought to hear this case en banc because the
panel majority has created a clear conflict on this issue.
Most to the point is *In re United States Catholic Conference*,
885 F.2d 1020 (2d Cir. 1989). There, the Court of Appeals
for the Second Circuit denied taxpayer standing to pro-
choice supporters who sought to challenge a decision by
the IRS to grant tax-exempt status to the Catholic Church.
Critically, as in *Valley Forge* and in this case, the plain-
tiffs had not asserted that Congress wrote the Internal
Revenue Code in a manner that favored the Catholic Church.
Nor had they alleged that the Code authorized the IRS to do
what it was doing (allegedly closing its eyes to violations by
the Church). Instead, "[t]he complaint center[ed] on an
alleged decision made solely by the executive branch that, in
plaintiffs' view, directly contravene[d] Congress' aim." *Id.* at
1028. The plaintiffs therefore had not established, as the
Supreme Court requires, "a sufficient nexus between the
taxpayer's standing as a taxpayer and the *congressional*
exercise of taxing and spending power." *Id.* (emphasis
added). The present case is indistinguishable.[1]

Fortunately, this case not only meets the criteria for

---

[1] The panel majority's terse attempt to distinguish *In re United
States Catholic Conference* on the basis of there being, in that
case, "no expenditure of appropriated funds," *Freedom From
Religion Foundation, Inc. v. Chao*, 433 F.3d 989, 993 (7th Cir. 2006),
misses the mark. For purposes of taxpayer standing, a tax
exemption is no different from a positive appropriation, and
no less an exercise of Congress' power to tax and spend for
the general welfare. *See* U.S. Const. art. I, sec. 8.

en banc review set forth in our rules, see Fed. R. App. P. 35, but also the criteria for certiorari review in the Supreme Court of the United States, *see* Sup. Ct. R. 10. This court has "decided an important federal question in a way that conflicts with the relevant decisions" of the Supreme Court. *See* Sup. Ct. R. 10(c). It also has "entered a decision in conflict with the decision of another United States court of appeals on the same important matter." Sup. Ct. R. 10(a). The Government therefore has one last forum in which to seek a return to traditional principles governing the right of a taxpayer to challenge a decision of the executive.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*